## KISTLER *v.* STATE OF INDIANA.

### [No. 23,825.   Filed January 26, 1921.]

1. HUSBAND AND WIFE.—*Desertion.—Affidavit.—Sufficiency.—* An affidavit against a husband for desertion of his wife in violation of §2635 Burns 1914, Acts 1913 p. 956, charging him with "leaving her without reasonable means of support or continuing support," is not insufficient as against the objection that it "does not charge she was without support, only that he left her no support, nor does it charge she was without means of support and liable to become a charge upon the county or township." p. 151.

2. INDICTMENT AND INFORMATION.—*Charge in Language of Statute.—Sufficiency.—*A criminal charge in the language of the statute which alone states specifically the acts constituting the offense, is sufficient.   p. 151.

3. CRIMINAL LAW.—*Evidence.—Weight.—Desertion.—*The Supreme Court will not set aside a judgment where there is any evidence to support a verdict of conviction; hence, in an appeal from a judgment of conviction of a husband for desertion, where the defendant relies largely upon evidence tending to show support of his wife by her parents whose means of livelihood was their wages as factory employes, supplemented by his proposal to pay her $150 on condition that she get a divorce and dismiss the desertion proceeding, the court on appeal will not disturb the verdict of the jury and the action of the court in denying the motion for new trial because of insufficiency of the evidence.   p. 152.

4. STATUTES. — *Criminal. — Construction.* — Criminal statutes must be strictly contrued.   p. 155.

5. HUSBAND AND WIFE.—*Desertion.—Reasonable Means of Support.—Construction.—*In a prosecution of a husband for deser-

tion in violation of §2635 Burns 1914, Acts 1913 p. 956, it is not necessary for the state to show conclusively that the wife thereby became a charge upon the county or township; and though there is no fixed standard defining what constitutes "reasonable means of support," within the meaning of the statute, its application depending upon conditions and circumstances of the parties, yet where it appears that the husband failed to put forth every honest exertion to meet the statutory requirements and his wife was without money or property to rely upon for reasonable support, she being dependent therefor upon her parents, whose means of livelihood was their wages as factory employes, it may not be said that he is not within the provisions of the statute.    p. 155.

6.  HUSBAND AND WIFE.—*Support of Wife by Parents.—Defense in Desertion Action.*—Where a husband left the wife with intent to desert her, he may not defend in a prosecution for desertion, under §2635 Burns 1914, Acts 1913 p. 956, on the ground that the wife had been continuously sheltered and fed by her parents, where the circumstances were such that she could not rely upon her parents for more than temporary support.    p. 156.

7.  CRIMINAL LAW.—*Desertion Statute.—Constitutionality.*—Section 2635 Burns 1914, Acts 1913 p. 956, providing punishment for unlawful desertion of a wife by the husband is not violative of §§16, 18, Art. 1, of the Constitution on the ground that the punishment provided is cruel and unusual, such constitutional provisions being aimed at the character and form of the punishment rather than at the duration and amount thereof.    p. 157.

8.  CONSTITUTIONAL LAW.—*Definition of Crimes.—Legislative Power.*—Defining crimes and prescribing the limits of punishment to be inflicted is a legislative and not a judicial function.    p. 157.

From Wabash Circuit Court; *Nelson G. Hunter,* Judge.

Prosecution by the State of Indiana against Joseph Kistler. From a judgment of conviction, the defendant appeals.  *Affirmed.*

*D. F. Brooks,* for appellant.

*Ele Stansbury,* Attorney-General, and *Remster A. Bingham,* for the state.

MYERS, J.—In the Wabash Circuit Court appellant was charged by affidavit, tried and convicted by a jury of unlawfully deserting his wife in violation of §2635 Burns 1914, Acts 1913 p. 956. From a judgment committing appellant to the Indiana reformatory from one to three years and disfranchisement for three years, he appealed to this court and assigned as error the action of the trial court: (1) In overruling his motion to quash the affidavit; (2) in overruling his motion in arrest of judgment; and (3) in overruling his motion for a new trial.

Considering these errors in the order above indicated, that part of the affidavit questioned is as follows: "Leaving her without reasonable means of support or continuing support." Appellant insists that this affidavit in the particular mentioned is not sufficient for the reason that it "does not charge she was without support, only that he left her no support, nor does it charge she was without means of support and liable to become a charge upon the county or township," and therefore did not charge a public offense. The specific language of the statute now involved is "leaving her without reasonable means of support and continuing support." Thus it will be noticed that the affidavit on the point in question follows the exact language of the statute, and meets the objection successfully urged against the charge in the case of *State* v. *Rice* (1886), 106 Ind. 139, 5 N. E. 906, relied on by appellant. In that case this court held that an indictment charging the defendant with deserting his wife "without making provision for her comfortable support" did not charge a crime, because the offense as charged was "open to the inference that the wife may have been left with abundant provision for her comfortable support,

although such provision was not made by the husband." The statute then in force and considered (§2133 R. S. 1881) read "without provision for comfortable support," and, while its wording was somewhat different from our present statute, nevertheless the principle announced in that case that "the offense should have been charged in the language of the statute" sustains the charge at bar. The law in this state is well settled that a criminal charge in the language of the statute which alone states specifically the acts constituting the offense, is sufficient. State v. New (1905), 165 Ind. 571, 76 N. E. 400; Donovan v. State (1908), 170 Ind. 123, 83 N. E. 744; Rigrish v. State (1912), 178 Ind. 470, 99 N. E. 786; Scherer v. State (1919), 188 Ind. 14, 121 N. E. 369. The affidavit in the case at bar was sufficient to withstand the motion to quash and the motion in arrest. Bass v. State (1919), 188 Ind. 21, 120 N. E. 657.

Appellant further insists that the verdict of the jury is not sustained by the evidence. Under this heading appellant claims there is no evidence tending to

3. show that he left his wife without reasonable means of support, but, on the contrary, it shows that she was adequately supported by her father, and for that reason he is not criminally liable. No good purpose will be subserved by a lengthy statement of the evidence bearing upon this point. However, in order that a better understanding of this case may be had, we call attention to the following facts and circumstances:

Appellant and the prosecuting witness were married on May 18, 1919, and lived together as husband and wife until the evening of March 26, 1920, when, without cause so far as the evidence shows, he left for parts unknown to his wife, and did not thereafter communicate with her in any manner until after he was arrested at Vincennes and returned to Wabash, Indiana. At the

time of appellant's disappearance he and his wife were living with his parents on his father's farm about six miles south of Wabash, Indiana, where, since August before, he had been engaged in farming. He owned no land, but had personal property on which, in January, 1920, he gave his father a chattel mortgage to indemnify him against loss by reason of his suretyship on certain of appellant's notes for practically the full value of all his property. On March 27, 1920, appellant caused to be printed in the Wabash Daily Times Star the following notice: "I will not be responsible for any bills charged by Mrs. Joseph Kistler. (Signed) Joseph Kistler." His wife, at the time he left, had been pregnant for about three months and had no property whatever, except ten cents in money and her personal clothing. He left his wife at the home of his parents without saying anything to them as to where he was going, nor did he make any arrangements for any means for his wife's support. His wife testified that "Joe left the night of the 26th. I got up the morning of the 27th and he was gone. I said to his parents, What shall I do? I asked them their advice. Well, he (meaning Joe's father) says, 'You know the condition I am in I can't keep you. The only thing I know is to go out and work and support yourself.' His mother advised me the same thing and they brought me to town." She then went to the home of her parents, where she remained and was living at the time of the trial. Her father and mother worked in a factory and she assisted in the housework. Appellant testified that he had $20 in money when he left and told no one where he was going. He went to Vincennes, obtained employment, and continued to work there until arrested and brought back to Wabash on this charge. While away he did not communicate with his wife or his parents, but on his return he sought and obtained an interview

with his wife at the office of his attorney, when he proposed to give her $100 or $150 and care for the child when born if she would get a divorce and dismiss this prosecution.

With reference to the evidence, an appellate tribunal does not occupy the position of a jury, or that of the trial court. The well-settled rules of law absolutely prohibit this court from setting aside a judgment based on the verdict of a jury where there is any evidence to support such verdict. The jury in this case passed upon the evidence and found appellant guilty as charged, and the motion for a new trial brought the evidence to the attention of the trial court for review, and that court by denying the motion, in effect, said that the evidence was sufficient. The evidence is now before this court not for the purpose of weighing it, nor for the purpose of settling conflicts, but for the sole object of determining whether or not there was competent evidence before the jury to sustain the verdict, which amounts to a general finding that appellant on March 26, 1920, without cause, deserted his wife, leaving her without reasonable means of support. Upon a careful examination of the evidence, we are fully convinced that the verdict in this particular is sustained. In coming to this conclusion we are not unmindful of the construction placed upon a similar statute. *State* v. *Langdon* (1902), 159 Ind. 377, 378, 65 N. E. 1. In this connection, appellant seems to rely largely upon the evidence tending to show comfortable support of his wife by her parents, supplemented by his conditional proposal of $150. If the proposal tended to prove anything, it was that within a few days after the admitted desertion he was not without ability to furnish support, which he was even then unwilling to do except on condition that his wife get a divorce and dismiss this prosecution. The offense with which he was charged was

committed, if at all, on March 26, 1920. *State* v. *Langdon, supra.*

The wife was not a party to this prosecution in the sense that she could, of her own volition, dismiss it. However this may be, or what may have been the object of his proposal, the offer was immaterial. The question of his guilt or innocence must be determined from the evidence pertinent to the offense as charged. In this state we are well aware of the rule that a criminal statute must be strictly construed, but we are not willing to concede the contention that in order to make a husband guilty of deserting his wife, under §2635, *supra,* the state must show conclusively that she thereby became a charge upon the county or township, as seems to have been held by some courts, notably Georgia and Missouri, in passing on evidence sufficient to support a charge of desertion based upon a statute containing the words "destitute and necessitous circumstances." However, we are willing to admit that there is no fixed standard by which the law undertakes to define what shall constitute "reasonable means of support." True, as appellant insists, it may vary to some extent with the conditions and circumstances of the parties and, while it would be exceedingly difficult, if not impossible, to lay down a hard and fast rule applicable alike to all cases of this character, yet, under the evidence in this case and the statute invoked, it cannot be said that he is not within the provisions of such statute, when it clearly appears that he has not put forth every honest exertion to meet its requirements, and his wife at the time is without money or property upon which she can rely for reasonable support. However, it is frequently said that the wife's remedy in such cases is by way of alimony in the divorce court. While the desertion statute is in force, we cannot sanction a theory which will

permit an able-bodied husband, without cause, to starve his wife into a divorce court in order to compel him to do his moral and legal duty.

In the instant case the evidence shows that appellant was a young man twenty-one years of age, and, for aught appearing, able-bodied and capable of furnishing his wife, nineteen years of age, reasonable means of support; while, on the other hand, there was no evidence tending to show that his wife had complained of his efforts in that respect prior to the time of the alleged desertion. But it does appear that after their marriage she had assisted him by wages received for her services as clerk in a store for four weeks, and for her work under another employment for two weeks. We have already referred to the evidence as to her physical and financial condition at the time of the alleged desertion, and the advice given her by his parents. We have also referred to the place of her abode and her doings, and to her support by her parents from their wages as factory employes.

Appellant in effect insists that, although he did intend to desert his wife, he is not within the statute, for the reason that it appears that his wife has been 6. continuously sheltered and fed by her parents. This case under the facts and circumstances is not one where the wife may rely upon her parents for more than temporary partial support, and this fact will not furnish a defense to this action. This conclusion, we believe, is in line with the great weight of authority. *Hunter* v. *State* (1913), 10 Okla. Cr. 119, 130, 134 Pac. 1134, L. R. A. 1915A 564, Ann. Cas. 1916A 612; *State* v. *Morgan* (1910), 146 Iowa 298, 125 N. W. 166; *State* v. *Weyant* (1910), 149 Iowa 457, 128 N. W. 839; *State* v. *Waller* (1913), 90 Kan. 829, 136 Pac. 215, 49 L. R. A. (N. S.) 588; *State* v. *Meara* (1913), 79 Misc. Rep. 57, 140 N. Y. Supp. 575; *People* v. *Malsch*

(1898), 119 Mich 112, 77 N. W. 638, 75 Am. St. 381; *Burton* v. *Commonwealth* (1909), 109 Va. 800, 63 S. E. 464; *State* v. *Witham* (1888), 70 Wis. 473, 35 N. W. 934; *People* v. *Stickle* (1909), 156 Mich. 557, 121 N. W. 497; *People* v. *Romaine* (1908), 57 Misc. Rep. 571, 109 N. Y. Supp. 1100; *Poole* v. *People* (1898), 24 Colo. 510, 52 Pac. 1025, 65 Am. St. 245; *State* v. *Conway* (1918), 182 Iowa 1236, 166 N. W. 596; *State* v. *Langford* (1918), 90 Ore. 251, 176 Pac. 197; *State* v. *Bess* (1913), 44 Utah 39, 137 Pac. 829. In the case last cited the court, in the course of its opinion, well said: "In other words, we would have this anomaly: A defendant, whose family, because of his violation of a penal statute, is being sheltered, fed, and clothed by sympathetic friends or charitable institutions, interposing this same charity as a shield to protect himself from the penalties which the law imposes for the violation of the statute under which he is prosecuted. Such is not the intent or spirit of the law. To so hold would be to make a farce of the law and a mockery of justice."

Appellant finally insists that §2635, *supra*, is unconstitutional in that the punishment therein provided is inhibited by §16 and §18 of the Bill of Rights.

7. If these sections of Art. 1 of our Constitution may be successfully invoked in this case, the provisions of our Criminal Code will be greatly

8. endangered by the announcement of a rule which would permit the overthrow of a law because of the severity of the punishment as applied to a particular case. This cannot be the law, nor can it be the purpose of these provisions of our Constitution. Appellant's insistence, if carried to its last analysis, would require us to hold that capital punishment could not be enforced in any case because such statute as to punishment would not be founded on "principles of reformation," and it might well be argued, as in this

case, that the punishment fixed would be cruel and in a sense vindictive, but the courts of this country have not taken that view of such laws, and with one accord have reached the conclusion that criminal laws as a system are framed on the theory of protecting society and of reform. Defining crimes and prescribing the limits of punishment to be inflicted is a legislative and not a judicial function. While it is not impossible, yet it is highly improbable, in this day and age, that the courts will be called upon, or feel authorized, to strike down a law, unless it unmistakably and conclusively appears that it carries a punishment shockingly disproportioned to the offense charged. The constitutional provisions, "cruel and unusual punishments, are aimed at the form or character of the punishment rather than its severity in respect to duration and amount." 8 R. C. L. 262, §§271, 272. We are not impressed with the thought that the law now in question is subject to the attack last urged against it, and for that reason appellant's contention must be denied. *Rice* v. *State* (1855), 7 Ind. 332; *Driskill* v. *State* (1855), 7 Ind. 338; *State* v. *Finch* (1909), 54 Ore. 482, 103 Pac. 505; *Hobbs* v. *State* (1893), 133 Ind. 404, 32 N. E. 1019, 18 L. R. A. 774; *Jackson* v. *United States* (1900), 102 Fed. 473, 487, 42 C. C. A. 452; *Weems* v. *United States* (1910), 217 U. S. 349, 30 Sup. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705; 16 C. J. 1353, §§3191, 3192.

We have considered all of the questions to which our attention has been called, and, finding no reversible error, the judgment in this case is affirmed.