BAKER, Judge,
concurring in part and dissenting in part.
I agree with the majority’s determination that the statute of limitations had not run with respect to the State’s ability to bring charges against Lebo. More particularly, I believe that Lebo’s concealment, properly alleged in the charging informa-tions, tolled the statute of limitations as it applied to her such that the charges filed against her in September 2011 were not time-barred. I part ways only briefly on this issue to note my belief that the tolling ceased when the State had probable cause to arrest Ashcraft, because at this time the State could have discovered through due diligence whether Lebo, in her role as KT.’s coach and as Ashcraft’s superior, had failed to make a report required under Indiana Code sections 31-33-5-1 or 31 — 33— 5-2. Under either interpretation of when the tolling stopped, however, the charges against Lebo were brought within the two-year statute of limitations.
Because by all accounts the statute of limitations had not run, I believe that it is unnecessary for this Court to reach whether our legislature contemplated or created the offense of failure to report child abuse or neglect as a continuing offense. Nevertheless, because the majority reaches this issue, I must note that I cannot agree with the majority’s characterization of the failure to report child abuse or neglect as a continuing offense that never invokes the statute of limitations.
More than thirty years ago, our Supreme Court commented on the fundamental fairness of having and enforcing statutes of limitations by saying:
Formerly, statutes of limitations were looked upon with disfavor in that they are invariably in derogation of the common law. Now, however, the judicial attitude is in favor of statutes of limitations, rather than otherwise, since they are considered as statutes of repose and as affording security against stale claims. Consequently, except in the case of statutes of limitations against the government, the courts are inclined to construe limitation laws liberally, so as to effect the intention of the legislature.
Shideler v. Dwyer, 275 Ind. 270, 273, 417 N.E.2d 281, 284 (1981) (internal quotation marks and citation omitted). As aptly highlighted by the majority, our Supreme Court recently reiterated this rationale by stating that the purpose of a statute of limitations in a criminal case is to “protect defendants from the prejudice that a delay in prosecution could bring, such as fading memories and stale evidence.” Sloan v. State, 947 N.E.2d 917, 920 (Ind.2011) (citing Kifer v. State, 740 N.E.2d 586, 587 (Ind.Ct.App.2000)). In my view, these concerns remain ever-present where the alleged crime consists of a failure to act, as *1040 is the case here, as opposed to a crime with an overt actus reus. Indeed, in such cases there may be even more of a risk of fading memories and stale evidence.
Furthermore, unlike the majority, I do not believe that our legislature has indicated a clear intent to make failure to report child abuse or neglect a continuing offense. The State charged Lebo under Indiana Code section 31-33-22-1, which provides, “[a] person who knowingly fails to make a report required by IC 31-33-5-1 commits a Class B misdemeanor,” and “[a] person who knowingly fails to make a report required by IC 31-33-5-2 commits a Class B misdemeanor.” Ind.Code § 31-33-22-1 (emphases added). Based on this language, I believe that it is clear that the legislature intended for only one crime to result under each of the failure to report statutes.[1] See State v. Langdon, 159 Ind. 377, 377, 65 N.E. 1, 2 (1902) (holding that the former crime of deserting one’s wife was “but one offense,” and explicitly rejecting the idea that there was a new crime of desertion each day the husband remained absent).
Moreover, I do not believe that Indiana Code section 31-33-5-3 clearly expresses the legislature’s intent to make failure to report child abuse or neglect a continuing offense by its provision that an individual is not “relieved” of the duty to make a report unless that individual believes a report has already been made. Indeed, the meaning of Indiana Code section 31-33-5-3 becomes apparent when it is analyzed in the context of its surrounding statutes. Indiana Code section 31-33-5-1, the statute that imposes the general duty to report child abuse, provides that “an individual who has reason to believe that a child is a victim of child abuse or neglect shall make a report as required by this article.” Such a report must be made “immediately.” I.C. § 31-33-5-4. Indiana Code section 31-33-5-2 imposes an additional duty on individuals acquiring that “reason to believe” in certain professional capacities to also “immediately” notify the person in charge of the individual’s employing institution, who should then report the alleged abuse or neglect. In this context, it is clear that Indiana Code section 31-33-5-3 operates, not to impose a continuing duty to report, but to be clear that once the initial individual with the “reason to believe” notifies the person in charge of the employing institution, that initial individual must still make a separate report to the designated authorities if the person in charge would for any reason fail to make the institution’s report as required by Indiana Code section 31-33-5-2.
Finally, in my view, any intent of the legislature to make the failure to report child abuse or neglect a continuing offense is at best ambiguous, and it “[i]t is well-established that penal statutes must be strictly construed against the state.” Sunday v. State, 720 N.E.2d 716, 719 (Ind.1999). When this principle is added to the fact that statutes of limitations are favored in Indiana and the doctrine of continuing offense is meant to be an extremely limited doctrine, I do not believe this Court can reasonably interpret the failure to report child abuse or neglect as a continuing offense.
I am sensitive to the fact that if someone fails to make a report, child abuse or neglect could continue for every day that the report goes unmade. See op. at 1037. However, we must also be reminded that *1041 the person who has “reason to believe” that child abuse or neglect has occurred and fails to report that abuse or neglect is not the person inflicting harm on the child. Yet the statute of limitations does not fail to apply to those who commit heinous crimes against children.
Notwithstanding my view that the statute of limitations was tolled by Lebo’s acts of concealment, I believe that the trial court erred in denying Lebo’s motion to dismiss. Neither the State’s charging information nor the evidence presented at the probable cause hearing alleged facts that, even if taken as true, would suggest that Lebo had “reason to believe” that K.T. was the victim of child abuse. “Reason to believe,” for the purposes of the failure to report statute, has been defined by our legislature as “evidence that, if presented to individuals of similar background and training, would cause the individuals to believe that a child was abused or neglected.” Ind.Code § 31-9-2-101. There is no corresponding statutory definition for “believe,” but this term is defined by Black’s Law Dictionary as “[t]o feel certain about the truth of; to accept as true.” Black’s Law Dictionary (9th ed. 2009).
Here, the facts demonstrated by the State to have been known by Lebo — that Ashcraft had leaned on KT.’s legs during a movie, that Ashcraft had his arm around K.T. and shared yogurt with her during a bus trip, or that some parents had complained to Lebo that Ashcraft and K.T. appeared “almost like they were boyfriend and girlfriend” — would not, in my view, cause an individual of similar background and training as Lebo to “believe” that Ashcraft was engaging in illegal sexual activity with K.T. Appellant’s App. p. 59, 64. Although these acts may be viewed in hindsight as suggestive of Ashcraft’s caddish behavior, at the time Lebo knew these facts, there is no way that a person in a similar position as Lebo would “feel certain” that Ashcraft was engaging in illegal sexual acts with K.T.
While Lebo need not have observed conduct of Ashcraft and K.T. satisfying the elements of a particular sex crime statute before she can be said to have a duty to report child abuse or neglect, see op. at 1038-39, neither does the duty to report attach merely because Lebo felt uncomfortable about some of Ashcraft’s actions. Importantly, the record is void of anyone actually telling Lebo that Ashcraft and K.T. were having a sexual relationship. Based on the knowledge that Lebo actually had, her actions of documenting her discomfort with Ashcraft’s behavior in his personnel file, intervening to stop inappropriate behavior she witnessed, and seeking Ashcraft’s resignation were reasonable. Although we may hope that individuals make a report any time child abuse or neglect is suspected, the duty to report has not been imposed by our legislature until one has “reason to believe” that abuse or neglect has occurred. My view is that there was no evidence that such “reason to believe” existed here, and therefore, the trial court should have granted Lebo’s motion to dismiss.
Accordingly, I dissent.

. Although one crime can be committed under each of these statutes, Indiana Code section 31-33-22-i makes clear that a penalty for failing to comply with Indiana Code section 31-33-5-2 can be in addition to the penalty imposed for a violation of Indiana Code section 31-33-5-1.